# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEREGRINE SEMICONDUCTOR CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>RF MICRO DEVICES, INC., a North Carolina corporation, MOTOROLA MOBILITY, INC., and JOHN DOES 1-10,<br><br>Defendants. | CASE NO. 12cv911 - IEG (WMC)<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANTS' MOTION TO TRANSFER**<br><br>[Doc. No. 13]<br><br>**(2) DENYING PLAINTIFF'S EX PARTE MOTION FOR LEAVE TO FILE A SURREPLY**<br><br>[Doc. No. 37] |

Presently before the Court is Defendants RF Micro Devices, Inc. ("RFMD") and Motorola Mobility, Inc. ("Motorola") (collectively "Defendants")'s motion to transfer the action to the Middle District of North Carolina. [Doc. No. 13.] For the reasons below, the Court **DENIES** the motion.[1]

## BACKGROUND

This is a patent infringement action. On April 13, 2012, Plaintiff Peregrine Semiconductor Corporation ("Peregrine") filed the present action against RFMD and Motorola alleging infringement of U.S. Patent No. 7,910,993 (the "'993 Patent"), U.S. Patent No. 7,123,898 (the

---

[1] On May 31, 2012, Plaintiff filed an ex parte motion for leave to file a surreply. [Doc. No. 37.] After considering Plaintiff's ex parte motion, the Court declines to grant Plaintiff leave to file its surreply and **DENIES** Plaintiff's ex parte motion.

1  "'898 Patent"), U.S. Patent No. 7,460,852 (the "'852 Patent"), U.S. Patent No. 7,796,969 (the
2  "'969 Patent"), and U.S. Patent No. 7,860,499 (the "'499 Patent") (collectively "the patents-in-
3  suit"). [Doc. No. 1, Compl.] In the complaint, Peregrine accuses both integrated circuits, which
4  are marketed and sold by RFMD, and devices that use those circuits, which are marketed and sold
5  by Motorola, of infringing the patents-in-suit. [Id. ¶¶ 12, 18, 24, 30, 36.]
6      Peregrine is a Delaware corporation with its principal place of business in San Diego
7  California. [Doc. No. 32-1, Declaration of Joel Keller ("Keller Decl.") ¶ 2.] Peregrine
8  manufactures semiconductors and is the owner of the patents-in-suit. [Id. ¶ 4, 6.] Four of the
9  inventors of the patents-in-suit–Jim Cable, Mark Burgener, Dylan Kelly, and George Imthurn–are
10 Peregrine employees. [Id. ¶ 5.] The other remaining four inventors–Christopher Brindle, Michael
11 Stuber, Clint Kemerling, and Robert Welstand–are not Peregrine employees but are located in the
12 Southern District of California. [Id.]
13     RFMD is a North Carolina corporation with its principal place of business in Greensboro,
14 North Carolina. [Doc. No. 13-2, Declaration of Eric Creviston ("Creviston Decl.") ¶ 4.] More
15 than twenty of the RFMD engineers involved in the design, development, and testing of the
16 accused circuits and the related documents are located in Greensboro. [Id. ¶¶ 9-10.] Substantially
17 all of the RFMD employees who market and sell the accused circuits in the United States and the
18 documents relating to marketing are located in Greensboro. [Id. ¶¶ 13-14.] Substantially all of the
19 RFMD employees knowledgeable about financial data and documents relating to financial data are
20 located in Greensboro. [Id. ¶¶ 15-16.] The accused circuits are manufactured primarily in
21 Burlington, Vermont. [Id. ¶ 26.]
22     Motorola is a Delaware Corporation with its principal place of business in Libertyville,
23 Illinois. [Doc. No. 13-3, Declaration of Robert Pluta ("Pluta Decl.") ¶ 4.] Motorola does not
24 design, manufacture, or separately sell or offer for sale the accused circuits. [Id. ¶¶ 6-8.]
25 Motorola purchases the accused circuits from RFMD for use in its smartphones. [Id. ¶ 5.] The
26 Motorola engineers who communicate with RFMD regarding the acquisition and integration of the
27 accused circuits in Motorola's smartphones are located in Lowell, Massachusetts. [Id. ¶ 9.] The
28 Motorola employees and documents relevant to the sale and marketing of the accused smartphones

1 are primarily located in Libertyville, Illinois.  [Id. ¶ 10.]

## DISCUSSION

**I.      Legal Standards for a Motion to Transfer**

Under 28 U.S.C. § 1404, a district court "may transfer any civil action to any other district or division where it might have been brought" "for the convenience of parties and witnesses" and "in the interest of justice."  28 U.S.C. § 1404(a).  This statute "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).  Because a motion to transfer does not involve substantive issues of patent law, Defendants' motion is governed by regional circuit law.  See In re TS Tech United States Corp., 551 F.3d 1315, 1319 (Fed. Cir. 2008); Storage Tech. Corp. v. Cisco Sys., Inc., 329 F.3d 823, 836 (Fed. Cir. 2003).

Determining whether an action should be transferred pursuant to § 1404(a) is a two-step process in which the burden of proof is on the defendant.  Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979).  The district court must first determine whether the action "might have been brought" in the transferee court, and then the court must determine whether the "convenience of the parties and witnesses in the interest of justice" favor transfer.  Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985).  The second determination requires the district court "to weigh multiple factors."  Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000).  The factors may include: (1) the plaintiff's choice of forum; (2) the contacts relating to the plaintiff's cause of action in the chosen forum; (3) the respective parties' contacts with the forum; (4) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (5) the differences in the costs of litigation in the two forums; (6) the ease of access to sources of proof; (7) the location where the relevant agreements were negotiated and executed; (8) the state that is most familiar with the governing law; (9) the feasibility of consolidation with a pending case in the transferee forum; (10) the speed to trial in two forums; (11) the local interest in having localized controversies decided at home; and (12) the unfairness of burdening citizens in an unrelated forum with jury duty.  See id. at 498-99; Decker Coal Co. v.

1  Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

2        The "[w]eighing of factors for and against transfer involves subtle considerations and is
3  best left to the discretion of the trial judge." Sparling v. Hoffman Constr. Co., Inc., 864 F.2d 635,
4  639 (9th Cir. 1988) (quotation marks omitted). Therefore, the decision of whether to transfer an
5  action under § 1404(a) is reviewed for abuse of discretion. Id.

6  **II.    Whether the Action Could Have Been Brought In The Middle District of North**
7        **Carolina**

8        Defendants argue that Peregrine's action could have been brought in the Middle District of
9  North Carolina. [Doc. No. 13-1 at 8-9.] The phrase where an action "could have been brought" is
10 interpreted to mean that the proposed transferee court would have subject matter jurisdiction,
11 proper venue, and personal jurisdiction. See A. J. Industries, Inc. v. U.S. District Court for Central
12 Dist. of Cal., 503 F.2d 384, 386-88 (9th Cir. 1974); Shapiro v. Bonanza Hotel Co., 185 F.2d 777,
13 779-81 (9th Cir. 1950).

14       A.    Subject Matter Jurisdiction

15       Under 28 U.S.C. § 1338(a), district courts have subject matter jurisdiction over claims for
16 patent infringement. AstraZeneca Pharms. LP v. Apotex Corp., 669 F.3d 1370, 1377 (Fed. Cir.
17 2012) ("The district courts have original jurisdiction over any civil action arising under any Act of
18 Congress relating to patents."). Therefore, a district court in the Middle District of North Carolina
19 would have subject matter jurisdiction over Peregrine's action.

20       B.    Venue and Personal Jurisdiction over Defendants

21       Venue in a patent infringement action is proper in any judicial district "where the
22 defendant resides or where the defendant has committed acts of infringement and has a regular and
23 established place of business." 28 U.S.C. § 1400(b). For venue purposes, the residence of a
24 corporate defendant is governed by 28 U.S.C. § 1391(c), which provides that the defendant shall
25 be determined to reside in any judicial district where the defendant is subject to personal
26 jurisdiction. See Hoover Group v. Custom Metalcraft, 84 F.3d 1408, 1410 (Fed. Cir. 1996);
27 Timeline, Inc. v. Proclarity Corp., 2006 U.S. Dist. LEXIS 50056, at *15 (W.D. Wash. Jul. 20,
28 2006).

1    Federal Circuit law governs the determination of personal jurisdiction in an action for
2 patent infringement. Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1328 (Fed. Cir.
3 2008). To establish specific jurisdiction, a plaintiff must demonstrate that the defendant has
4 "purposefully directed" his activities at residents of the forum, and the litigation results from
5 alleged injuries that arise out of or relate to those activities. Id. at 1330. Thus, in an ordinary
6 patent infringement suit, "for purposes of specific jurisdiction, the jurisdictional inquiry is
7 relatively easily discerned from the nature and extent of the commercialization of the accused
8 products or services by the defendant in the forum." Id. at 1332.
9    Defendants argue that the Middle District of North Carolina would have specific personal
10 jurisdiction over both Defendants because they have conducted business, sold accused products,
11 and employed personnel in that district. [Doc. No. 13-1 at 8-9.] In addition, Defendants states that
12 they are subject to service of process in that district. [Id. at 9.] Peregrine does not appear to
13 dispute these facts or contest that the Middle District of North Carolina would have specific
14 personal jurisdiction over the Defendants. [See generally Doc. No. 32.] Therefore, Defendants
15 have met their burden of showing that the Middle District of North Carolina would have personal
16 jurisdiction over them and venue would be proper.
17    C.    Personal Jurisdiction over Plaintiff
18    In its opposition, Peregrine argues that Defendants have failed to meet their burden of
19 showing that the action could have been brought in the Middle District of North Carolina because
20 the Defendants have not shown that the district would have personal jurisdiction over Peregrine.
21 [Doc. No. 32 at 4-6.] In support of its position, Peregrine cites to several district court cases where
22 the courts considered whether the transferee court would have personal jurisdiction over the
23 plaintiff. [Id. (citing Sanofi-Aventis Deutschland GmbH v. Novo Nordisk, Inc., 614 F. Supp. 2d
24 772, 780 (E.D. Tex. 2009); Tape & Techs. v. Davlyn Mfg. Co., 2005 U.S. Dist. LEXIS 8291, at
25 *10-11 (W.D. Tex. May 6, 2005); Aerotel, Ltd. v. Sprint Corp., 100 F. Supp. 2d 189, 198
26 (S.D.N.Y. 2000)).] However, the Federal Circuit and several district courts in the Ninth Circuit
27 have expressly rejected this argument and held that "[t]here is no requirement under § 1404(a) that
28 a transferee court have jurisdiction over the plaintiff or that there be sufficient minimum contacts

1  with the plaintiff." In re Genentech, Inc., 566 F.3d 1338, 1346 (Fed. Cir. 2009); accord. Pac.
2  Coast Trailers, LLC v. Cozad Trailer Sales, LLC, 2010 U.S. Dist. LEXIS 90615, at *5 n.1 (E.D.
3  Wash. Jul. 21, 2010); FTC v. Watson Pharms., Inc., 611 F. Supp. 2d 1081, 1090 (C.D. Cal. 2009);
4  see also Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960) (holding that the power to transfer an
5  action under § 1404 is dependant "upon whether the transferee district was one in which the action
6  'might have been brought' by the plaintiff"). The Court finds the reasoning from these cases more
7  persuasive than the cases cited by Peregrine. Therefore, Defendants are not required to show that
8  the Middle District of North Carolina would have personal jurisdiction over Peregrine.

   D.   Conclusion

   In sum, Defendants have met their burden of showing that Peregrine could have brought
the present action in the Middle District of North Carolina.

**III.   Analysis of the 1404(a) Factors**

   A.   Plaintiff's Choice of Forum

   Generally, a defendant "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." Decker Coal, 805 F.2d at 843. Moreover, "[a] plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen its 'home forum.'" In re Ferrero Litig., 768 F. Supp. 2d 1074, 1078 (S.D. Cal. 2011) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256 (1981)). Peregrine is headquartered in the Southern District of California. [Doc. No. 32-1, Keller Decl. ¶ 2.] Therefore, its choice to bring suit in this district is entitled to great deference. See id.

   Defendants argue that Peregrine's choice of forum should be given no deference because Peregrine previously filed an identical complaint in the Central District of California. [Doc. No. 13-1 at 10-11.] Defendants further argue that none of the parties, likely witnesses, or documents bore any connection to the Central District. [Id. at 10.] Defendants' arguments might have been persuasive if the action was still located in the Central District of California. However, Peregrine voluntarily withdrew its action from the Central District and filed it in the Southern District, where Peregrine is headquartered. Defendants have failed to provide the Court with any authority supporting their contention that Peregrine's decision to previously file its complaint in the Central

1  District of California weakens the deference to which Peregrine is entitled for now having filed the
2  action in its home forum.  Defendants accuse Peregrine of engaging of forum shopping.  [Id. at 9-
3  11.]  However, concerns about forum shopping are low when the plaintiff brings an action in its
4  home forum, see, e.g., Carijano v. Occidental Petroleum Corp., 643 F.3d 1216, 1229 (9th Cir.
5  2011); Cardoza v. T-Mobile USA Inc., 2009 U.S. Dist. LEXIS 25895, at *9 (N.D. Cal. Mar. 18,
6  2009) ("A plaintiff's decision to sue in the forum where its company is based does not amount to
7  impermissible forum shopping."), and when the plaintiff's action involves claims for patent
8  infringement.  See Heartland Payment Sys. v. VeriFone Isr., Ltd., 2010 U.S. Dist. LEXIS 41226,
9  at *10 (N.D. Cal. Apr. 22, 2010).

10  Defendants also argue that Peregrine's choice of forum is entitled to little deference
11  because the Southern District of California has no connection to the operative facts of this case.
12  [Doc. No. 11-13.]  The Court finds that it is more appropriate to address this argument in the next
13  factor below, the contacts in the forum relating to Plaintiff's cause of action.  Cf. Mentor Graphics
14  Corp. v. EVE-USA, Inc., 2011 U.S. Dist. LEXIS 57181, at *3-4 (D. Or. Apr. 8, 2011) (explaining
15  that even if the hub of infringing activity occurred elsewhere, the plaintiff's choice to bring the
16  action in its home forum was still entitled to substantial deference).  Accordingly, because
17  Peregrine has chosen to file the present action in its home forum, this factor weighs heavily against
18  transfer.  See Decker Coal, 805 F.2d at 843; Piper Aircraft, 454 U.S. at 256.

19      B.    The Contacts Relating to the Plaintiff's Cause of Action

20  Defendants argue that Peregrine's choice of forum is entitled to little deference because the
21  Southern District of California has no connection to the alleged infringing activities. [Doc. No. 11-
22  13.]  In response, Peregrine argues that some operative facts have occurred in this district.  [Doc.
23  No. 32 at 8-9.]

24  Courts may consider the facts of the case in determining how much deference to give the
25  plaintiff's choice of forum.  Ferrero, 768 F. Supp. 2d at 1079; see, e.g., Pacific Car & Foundry Co.
26  v. Pence, 403 F.2d 949, 954 (9th Cir. 1968) (considering whether "the operative facts" "occurred
27  within the forum of original selection" and whether that forum had any "particular interest in the
28  parties or the subject matter").  However, "[a] plaintiff's choice of forum receives minimal

1  consideration only if 'operative facts have not occurred within the forum and the forum has no
2  interest in the parties or subject matter[.]'" Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.,
3  2012 U.S. Dist. LEXIS 29434, at *11 (S.D. Cal. Mar. 6, 2012) (quoting Lou v. Belzberg, 834 F.2d
4  730, 739 (9th Cir. 1987)); see also Forest Guardians v. Kempthorne, 2007 U.S. Dist. LEXIS
5  65537, at *13 (S.D. Cal. Sept. 5, 2007) ("[V]enue is not limited to the district where the most
6  substantial events occurred.").

7  Defendants argue that the Southern District of California has no connection to the alleged
8  infringing activities. [Doc. No. 13-1 at 11-13.] In support of its argument, Defendants state that
9  nearly all the relevant witnesses and documents regarding the design, manufacture, marketing, and
10 sale of the accused products are located in Greensboro, North Carolina. [Id. at 12.] However, this
11 argument only addresses the sources of proof in the case, which is relevant to a different factor. It
12 does not address whether the alleged infringing activities have occurred in District. Under 35
13 U.S.C. § 271, "whoever without authority makes, uses, offers to sell, or sells any patented
14 invention, within the United States or imports into the United States any patented invention during
15 the term of the patent therefor, infringes the patent." Therefore, the alleged infringing activity
16 occurs wherever the Defendants make, use, offer to sell, or sell the accused products. Defendants
17 only state that none of the accused products are manufactured in the Southern District of
18 California. [Doc. No. 13-1 at 13.] Defendants do not state whether they have sold the accused
19 products or offered the accused products for sale in this District. Peregrine has produced evidence
20 showing that the accused products are sold in several stores in the Southern District of California.
21 [Doc. No. 32-4, Declaration of Monica Kapuscinska ("Kapuscinska Decl.") ¶ 2.] Therefore, at
22 least some of the operative facts of the complaint have occurred in this District. See Tessenderlo
23 Kerley, Inc. v. D & M Chem, Inc., 2011 U.S. Dist. LEXIS 129945, *5 (N.D. Cal. Nov. 7, 2011)
24 (explaining that the operative facts in a patent infringement action occur where the patent is
25 actually infringed).

26 Defendants also argue that Greensboro, North Carolina is the center of the alleged
27 infringing activity. [Doc. No. 13-1 at 3-5.] Several district courts in the Ninth Circuit have held
28 that "[i]n patent infringement actions, the preferred forum is 'that which is the center of gravity of

1  the accused activity.'" Amazon.com v. Cendant Corp., 404 F. Supp. 2d 1256, 1260 (W.D. Wash.
2  2005); see, e.g., Tessenderlo Kerley, Inc. v. D & M Chem, Inc., 2011 U.S. Dist. LEXIS 129945, at
3  *8-9 (N.D. Cal. Nov. 7, 2011); Google, Inc. v. Traffic Info., LLC, 2010 U.S. Dist. LEXIS 27017,
4  at *14-15 (D. Or. Feb. 2, 2010). Therefore, "[t]he district court 'ought to be as close as possible to
5  the milieu of the infringing device and the hub of activity centered around its production.'"
6  Amazon, 404 F. Supp. 2d at 1260. Defendants have produced evidence showing that the accused
7  circuits were designed, developed, and tested in Greensboro, North Carolina and witnesses and
8  documents relevant to the production of the accused products are located in Greensboro. [Doc.
9  No. 13-2, Creviston Decl. ¶¶ 3, 9-24.] Peregrine does not dispute these facts. Peregrine simply
10 argues that it is unclear Greensboro is the center of gravity because the accused circuits are
11 manufactured in Vermont, the Motorola engineers involved in the integration of the accused
12 circuits into Motorola smartphones are located in Lowell, Massachusetts, and the Motorola
13 employees and documents relevant to the sales and marketing of the accused phones are located in
14 Libertyville, Illinois. [Doc. No. 32 at 10.] However, although the accused circuits are
15 manufactured in Vermont, they are designed in Greensboro. In addition, although Motorola uses
16 the accused circuits in its smartphones, Motorola is not involved in the design or manufacture of
17 the accused circuits. Therefore, the center of the alleged infringing activity appears to be
18 Greensboro, North Carolina. Accordingly, this factor weighs in favor of transfer although its
19 weight is diminished because some operative facts have occurred in this District.

20            C.     The Respective Parties' Contacts with the Forum

21        Peregrine has substantial contacts with this district because it is headquartered in San
22 Diego. [Doc. No. 32-1, Keller Decl. ¶ 2.] Peregrine has produced evidence showing that RFMD
23 has a design, support, and sales center in Carlsbad, California and lists California as a "material
24 jurisdiction," and Motorola has an office in San Diego, California, where it maintains
25 manufacturing, sales and administrative facilities. [Doc. No. 32-5, Declaration of Alan H.
26 Blankenheimer ("Blankenheimer Decl.") ¶¶ 2-16, Exs. A-G.] Defendants do not dispute these
27 facts. Therefore, the Defendants in addition to Peregrine have significant contacts with this
28 District. Accordingly, this factor weighs against transfer.

1  D.  Convenience of Third Parties and Availability of Compulsory Process for
2       Non-Party Witnesses

3  A party may compel the testimony of its employees at trial. STX, Inc. v. Trik Stik, Inc., 708 F. Supp. 1551, 1556 (N.D. Cal. 1988). However, for non-employee witnesses, the Court's subpoena power only extends to within the district and one hundred miles of the place of trial. Fed. R. Civ. P. 45(b)(2). Therefore, "the convenience of third party witnesses is more important than that of party witnesses." Ferrero, 768 F. Supp. 2d at 1080; see, e.g., HollyAnne Corp. v. TFT, Inc., 199 F.3d 1304, 1307 n.2 (Fed. Cir. 1999) (stating that the location of employees "is not as important a factor as it would be if they were not under the [party's] control"). "In support of a motion to transfer, a party must identify potential witnesses by name and describe their testimony." Clark v. Sprint Spectrum L.P., 2010 U.S. Dist. LEXIS 136510, at *11 (N.D. Cal. 2010).

In their original motion, Defendants did not specifically identify any potential non-party witnesses by name or describe their testimony. In their reply, Defendants attached a declaration identifying three potential non-party witness who reside in Greensboro, North Carolina and could provide testimony about the design of the accused RFMD circuits and prior art to the patents-in-suit. [Doc. No. 33-3, Declaration of Eric Creviston ("Creviston Decl.") ¶ 4.] First, it is not proper for a party to submit new evidence in a reply brief. See Docusign, Inc. v. Sertifi, Inc., 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) ("It is well established that new arguments and evidence presented for the first time in Reply are waived."). Second, even if the Court were to consider this evidence, Peregrine has identified four non-party witnesses, four of the inventors of the '993 Patent, who reside in the Southern District of California and could provide testimony about the technology claimed by the '993 Patent and the validity of that patent. [Doc. No. 32 at 14; Doc. No. 32-1, Keller Decl. ¶ 5.] See Voice Techs. Group, Inc. v. VMC Sys., Inc., 164 F.3d 605, 615 (Fed. Cir. 1999) ("An inventor is a competent witness to explain the invention and what was intended to be conveyed by the specification and covered by the claims. The testimony of the inventor may also provide background information, including explanation of the problems that existed at the time the invention was made and the inventor's solution to these problems.").

1  Accordingly, this factor is at best neutral.

2      E.    Cost of Litigation in Either Forum

3  Neither of the parties addressed this factor. Accordingly, this factor is neutral and the
4  Court gives it little weight.

5      F.    Access to Sources of Proof

6  Defendants argue that this factor weighs in favor of transfer because all of the relevant
7  documents and witnesses related to the design, development, testing, marketing, and sales of the
8  accused circuits and potential prior art are located in Greensboro, North Carolina. [Doc. No. 13-1
9  at 13-15.] Defendants also argue that any potential Motorola witnesses and documents would be
10 closer to Greensboro than the Southern District of California. [Id. at 14-15.] In response,
11 Peregrine argues evidence related to the patents-in-suit is located in this District. [Doc. No. 32 at
12 14-15.]

13 "'In patent infringement cases, the bulk of the relevant evidence usually comes from the
14 accused infringer. Consequently, the place where the defendant's documents are kept weighs in
15 favor of transfer to that location." Genentech, 566 F.3d at 1345; accord. Barnes & Noble, Inc. v.
16 LSI Corp., 823 F. Supp. 2d 980, 994 (N.D. Cal. 2011). Therefore, this factor weighs in favor of
17 transfer. However, the Court gives this factor little weight. Given the advances in electronic
18 discovery and because the parties are large technology companies, they should have little difficulty
19 conducting discovery regardless of document location. See Multimedia Patent Trust v. Tandberg,
20 Inc., 2009 U.S. Dist. LEXIS 105652, at *13 (S.D. Cal. Nov. 12, 2009); Brackett v. Hilton Hotels
21 Corp., 619 F. Supp. 2d 810, 820 (N.D. Cal. 2008).[2]

22 ///
23 ///

24

---

25 [2] The Court acknowledges that the Federal Circuit in Genentech rejected the district court's determination that this factor should be considered neutral given advances in electronic storage and
26 transmission. 566 F.3d at 1346. However, the Court does not find that this factor is neutral. The Court recognizes that this factor weighs in favor of transfer but that its weight should be reduced given
27 the advances in electronic discovery. In addition, the Federal Circuit's opinion in Genentech is a case interpreting Fifth Circuit transfer law and, therefore, is not binding on this Court. See, e.g., In re
28 Affymetrix, Inc., 2010 U.S. App. LEXIS 7968, at *9-10 & n.3 (Fed. Cir. Apr. 13, 2010); GPNE Corp. v. Amazon.com, Inc., 2012 U.S. Dist. LEXIS 65026, at *18 n.1 (D. Haw. May 9, 2012).

G.  Location of Relevant Agreements

The record before the Court does not indicate the existence of any agreement between the parties relevant to this litigation. Accordingly, this factor is neutral and the Court gives it little weight.

H.  Familiarity With Governing Law

Peregrine's patent infringement claims are all based on and governed by federal law. [See Compl.] "[W]here federal law governs all claims raised, either forum is equally capable of hearing and deciding those questions." Forest Guardians, 2007 U.S. Dist. LEXIS 65537, at *12 (quotation marks omitted) (quoting Italian Colors Rest. v. Am. Express Co., 2003 U.S. Dist. LEXIS 20338, at *9 (N.D. Cal. Nov. 10, 2003)); see also PacTool, 2010 U.S. Dist. LEXIS 65105, at *9 ("A district court in Ohio is equally capable of applying the patent laws that govern this case."). Accordingly, this factor is neutral.

I.  Feasability of Consolidation

Defendants argue that the pendency of RFMD's declaratory judgment action against Peregrine on the same asserted patents in the Middle District of North Carolina weighs in favor of transfer. [Doc. No. 13-1 at 18-19.] In response, Peregrine argues that because RFMD filed their declaratory action after Peregrine initiated this action, under the first-to-file rule, this factor weighs against transfer. [Doc. No. 32 at 18-20.]

The pendency of a related case in the transferee forum can be an important consideration in determining whether the interests of justice warrant a transfer because "'of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties.'" Ferrero, 768 F. Supp. 2d at 1081 (quoting A.J. Indus., 503 F.2d at 389). However, Defendants fail to note that the declaratory action in North Carolina could be consolidated with this case. See Applied Elastomerics, Inc. v. Z-Man Fishing Prods., 2006 U.S. Dist. LEXIS 75339, at *17-18 (N.D. Cal. Oct. 6, 2006).

Furthermore, Defendants fail to recognize that the declaratory judgment action was filed three days after the complaint in this case was filed. [Compare Doc. No. 1, Compl. (filed Apr. 13, 2012) with Doc. No. 13-14, Dunne Decl. Ex. 10 (filed Apr. 16, 2012).] "There is a generally

recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982); accord. Apple Inc. v. Psystar Corp., 658 F.3d 1150, 1161 (9th Cir. 2011). "This doctrine, known as the first-to-file rule, gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." Ferrero, 768 F. Supp. 2d at 1082 (quotation marks omitted) (quoting Callaway Golf Co. v. Corporate Trade, Inc., 2010 U.S. Dist. LEXIS 17906, at *6-7 (N.D. Cal. Mar. 1, 2010)); see also Genentech v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993), overruled on other grounds by Wilton v. Seven Falls Co., 515 U.S. 277 (1995) ("We prefer to apply in patent cases the general rule whereby the forum of the first-filed case is favored, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise."); Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys., 458 F.3d 1335, 1343 (Fed. Cir. 2006) (recognizing "the general rule that favors the forum of the first-filed action").[3]

      In their reply, Defendants argue that their case should be given priority under the first-to-file rule because they filed a motion to transfer the action to the Middle District of North Carolina prior to Peregrine filing the present action in this District. [Doc. No. 33 at 10.] However, Defendants provide no authority for their contention that the first-to-file rule applies to an earlier filed motion to transfer. In discussing the first-to-file rule, the Ninth Circuit and the Federal Circuit have referred to the filing of complaints not the filing of motions to transfer. See, e.g., Pacesetter Systems, 678 F.2d at 94-95; Genentech, 998 F.2d at 937; see also Barnes & Noble, Inc. v. LSI Corp., 823 F. Supp. 2d 980, 987 (N.D. Cal. 2011) ("A number of courts have held that the filing of a complaint triggers the first-filed rule . . . ."). Therefore, this argument is unpersuasive. Under the first-to-file rule, the earlier filing date of this action likely gives the case priority over the declaratory judgment action filed in North Carolina. See, e.g., Ferrero, 768 F. Supp. 2d at

---

[3] In their reply, Defendants accuse Peregrine of repeatedly citing in its opposition brief Federal Circuit cases on the first-to-file rule that represent an outdated standard. [Doc. No. 33 at 3.] However, Defendants never explain in their reply brief why these cases represent an outdated standard or provide the Court with what they consider to be the correct standard.

1082. Accordingly, this factor weighs against transfer.

### J. Court Congestion and Speed to Trial in the Two Forums

Defendants argue that administrative difficulties flowing from court congestion weigh in favor of transfer to the Middle District of North Carolina. [Doc. No. 13-1 at 17-18.] Specifically, Defendants cite to a report showing that in a one year period 10,337 filings were made in the Southern District of California while only 1,550 filings were made in the Middle District of North Carolina during that same time period. [Id.] However, the Ninth Circuit has explained that "[t]he real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1337 (9th Cir. 1984). Defendants admit in their motion that they do not have any statistics showing the median time to trial in the Middle District of North Carolina. [Doc. No. 13-1 at 18 n.3.] Therefore, Defendants cannot show that a trial may be speedier in the Middle District of North Carolina than the Southern District of California.

In addition, even if court congestion by itself should weigh in favor of transfer, Defendants have not sufficiently shown that the Southern District is significantly more congested than the Middle District. Defendants' statistical evidence only shows the total amount of filings in each district over a one year period. It does not account for the different number of judges in each district[4] or separate the civil filings from the criminal ones.[5] Accordingly, this factor does not weigh in favor of transfer.

### K. The Local Interest in Having Localized Controversies Decided At Home

Defendants argue that the local interest in having localized controversies decided at home weighs in favor of transfer because Peregrine's allegations represent a controversy that is localized in Greensboro, North Carolina. [Doc. No. 13-1 at 17.] In response, Peregrine argues that California has a strong interest in protecting companies within its borders that hold valid patents.

---

[4] There are currently twelve active district judges, six senior district judges, and eleven magistrate judges in the Southern District of California as compared to four active district judges, one senior district judge, and two magistrate judges in the Middle District of North Carolina.

[5] The Southern District of California is one of the busiest districts in terms of criminal defendants. United States v. Minero-Rojas, 2011 U.S. Dist. LEXIS 127193, at *2 (S.D. Cal. Nov. 3, 2011).

[Doc. No. 32 at 16-17.]

Peregrine is headquartered in California, RFMD is headquartered in North Carolina, and Motorola is headquartered in Illinois. The harm from Defendants' alleged infringing activity is felt in California. See SKF Condition Monitoring, Inc. v. SAT Corp., 2008 U.S. Dist. LEXIS 24310, at *10 (S.D. Cal. Feb. 26, 2008). In addition, although Greensboro may be the center of the allegedly infringing activity, the accused products are sold in this district, the manufacturing of the accused products occurs primarily in Vermont, the Motorola engineers involved in the integration of the accused circuits into Motorola phones are located in Lowell, Massachusetts, and the Motorola employees and documents relevant to the sales and marketing of the accused phones are located in Libertyville, Illinois. [Doc. No. 13-2, Creviston Decl. ¶ 26; Doc. No. 13-3, Pluta Decl. ¶¶ 9-10; Doc. No. 32-4, Kapuscinska Decl. ¶ 2.] Therefore, the present action does not involve a controversy that is localized in North Carolina. Furthermore, although North Carolina may have an interest in adjudicating claims brought against its residents, "California also has a compelling interest in providing redress for its corporate citizen who claims that its patent is being infringed in the state of California." SKF Condition Monitoring, 2008 U.S. Dist. LEXIS 24310, at *17. Accordingly, this factor does not weigh in favor of transfer.

L.   The Unfairness of Burdening Citizens in an Unrelated Forum with Jury Duty

Defendants argue that it is unfair to burden citizens in an unrelated forum with jury duty. [Doc. No. 13-1 at 17.] However, the Southern District of California is not an unrelated forum. The Plaintiff is headquartered in this district, the accused products are sold in this district, the harm from infringement is felt in this district, both Defendants have contacts with this district, and the inventors of the patents-in-suit are located in this district. Therefore, it is fair to burden citizens of this district with jury duty in this action. Accordingly, this factor weighs against transfer.

M.   Conclusion

In sum, only two of the factors weigh in favor of transfer while four of the factors weigh against transfer and six of the factors are neutral. The Court gives less weight to the two factors favoring transfer for the reasons discussed above. See supra sections III.B, III.F. Therefore,

1  Defendants have failed to make the strong showing of inconvenience necessary to warrant
2  upsetting Peregrine's choice of its home forum. See Decker Coal, 805 F.2d at 843; Ferrero, 768 F.
3  Supp. 2d at 1078. Accordingly, exercising its discretion, the Court declines to transfer the action
4  to the Middle District of North Carolina.

## CONCLUSIONS

For the reasons above, the Court **DENIES** Defendants' motion to transfer.

**IT IS SO ORDERED.**

**DATED:** June 8, 2012

**IRMA E. GONZALEZ**
**United States District Judge**