UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEREGRINE SEMICONDUCTOR CORPORATION, a Delaware corporation,<br><br>          Plaintiff-Counterdefendant,<br>vs.<br><br>RF MICRO DEVICES, INC., a North Carolina corporation,<br><br>          Defendant-Counterclaimant. | CONSOLIDATED CASE NO.: 3:12-CV-0911-H (WMC)<br><br>CONSOLIDATED WITH: 3:13-CV-00725-H (WMC)<br><br>**ORDER DENYING PEREGRINE'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>[Doc. No. 99.] |
| PEREGRINE SEMICONDUCTOR CORPORATION, a Delaware corporation,<br><br>          Plaintiff,<br>vs.<br><br>ROBERT BENTON, an individual,<br>          Defendant. | |
| And Related Case | |

On November 25, 2013, Plaintiff Peregrine Semiconductor Corporation ("Peregrine") filed a motion for preliminary injunction against Defendants. (Doc. No. 99.) On December 13, 2013, Defendant RF Micro Devices, Inc. ("RFMD") filed its opposition to Peregrine's motion for preliminary injunction. (Doc. No. 113.) On December 20, 2013, Peregrine filed its reply. (Doc. No. 126.) On January 6, 2014, the

Court, pursuant to its discretion under Local Rule 7.1(d)(1), submitted the motion on the parties' papers. The Court denies Peregrine's motion.

## **Background**

On April 13, 2012, Peregrine filed the present action against RFMD alleging infringement of U.S. Patent No. 7,910,993 ("the '993 Patent"), U.S. Patent No. 7,123,898 ("the '898 Patent"), U.S. Patent No. 7,460,852 ("the '852 Patent"), U.S. Patent No. 7,796,969 ("the '969 Patent"), and U.S. Patent No. 7,860,499 ("the '499 Patent"). (Doc. No. 1.) Peregrine's complaint accuses RFMD of marketing and selling integrated circuits that infringe on these patents. (Id.)

On November 21, 2013, Peregrine filed a first amended complaint, adding Robert Benton ("Benton") as a defendant. (Doc. No. 97, "FAC".) Benton worked as a Senior RF Design Engineer in Peregrine's Campbell, California office from April, 1994 to December, 1997. (Doc. No. 99-5 "Reedy Decl." ¶ 4; Doc. No. 113-1 "Benton Decl." ¶ 1.) While at Peregrine, Benton used his own equipment and tools to conduct his work, and took his equipment and tools with him when left Peregrine. (Benton Decl. ¶ 8.)

To state a valid patent infringement claim, all inventors must be listed on the patent. See 35 U.S.C. § 256. Peregrine concedes that Benton should have been named as an inventor on U.S. Patent No. 6,804,502 ("the '502 patent") and the subsequent patents-in-suit including the '993 patent, the '898 patent, the '852 patent, the '969 patent, and the '499 patent (collectively, "the '502 family of patents").[1] (FAC ¶ 20.) In August, 2012, Dr. Ronald Reedy ("Reedy"), co-Founder and Chief Technology Officer of Peregrine, contacted Benton to discuss his contribution to the '502 family of patents. (Reedy Decl. ¶ 27; Benton Decl. ¶ 13.) In March, 2013, Reedy informed Benton that Peregrine wished to name him as an inventor of the '502 family of patents. (Reedy

---

[1] Benton assigned his rights in U.S. Patent No. 8,405,147 ("the '147 patent") to RFMD as well. (Doc. No. 99-1 at 6.) Since Peregrine has not asserted the '147 patent in this litigation, the Court's order does not address the '147 patent. (Id.)

- 2 -

Decl. ¶ 28; Benton Decl. ¶ 17.) However, Benton declined to assign his rights in the '502 family of patents to Peregrine. (Reedy Decl. ¶ 37.) Instead, in September, 2013, Benton transferred his right, title, and interest in the '502 family of patents to RFMD via an assignment agreement. (Reedy Decl. ¶ 40; Benton Decl. ¶ 20.)

On November 25, 2013, Peregrine filed a motion for a preliminary injunction, seeking to enjoin RFMD from engaging in any transfer, licensing, or proceedings before the Patent Office related to Benton's transfer of rights. (Doc. No. 99.)

## Discussion

### I.     Legal Standard for Preliminary Injunction

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, a court may grant preliminary injunctive relief in order to prevent irreparable injury. Fed. R. Civ. P. 65(a). A party seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22.

### II.    Likelihood of Success on the Merits

Peregrine puts forward two theories to argue that Benton's assignment of rights to RFMD was invalid. First, Peregrine argues that Benton was obligated to assign his inventorship rights to Peregrine pursuant to a written Employment and Assignment agreement. Second, Peregrine argues that the inventions developed by Benton during his time at Peregrine belong to Peregrine under the common law hired to invent doctrine and California Labor Code § 2860.

///

///

///

1  **A.  Benton's Purported Contractual Obligation to Assign Inventorship Rights to Peregrine**

A patent owner who seeks to assign his interest in the patent must do so in writing. 35 U.S.C. § 261; Sky Techs. LLC v. SAP AG, 576 F.3d 1374, 1380 (Fed. Cir. 2009) (citing Akazawa v. Link New Tech. Int'l, Inc., 520 F.3d 1354, 1357 (Fed. Cir. 2008)). Peregrine admits that it does not have any documentation of an Employment and Assignment agreement or Policy Manual signed by Benton. (Doc. No. 99-1 at 10.)

Nevertheless, Peregrine asserts that "there is no reason to believe that Mr. Benton did not sign" the Employment and Assignment agreement and Policy Manual in 1994, because it was Peregrine's company policy to require new employees to sign these documents. (Reedy Decl. ¶¶ 14-15.) In opposition, Benton submits a declaration asserting that he has no recollection of executing any employment agreement or assignment agreement during his time at Peregrine. (Benton Decl. ¶¶ 2-5.)

Based on the current record, Peregrine has not demonstrated a likelihood of success on the merits for its argument that Benton is bound by an Employment and Assignment agreement.

**B.  Peregrine's Claim to Benton's Inventions Under the Hired to Invent Doctrine and California Labor Code § 2860**

"The general rule is that an individual owns the patent rights to the subject matter of which he is an inventor, even though he conceived it or reduced it to practice in the course of his employment." Banks v. Unisys Corp., 228 F.3d 1357, 1359 (Fed. Cir. 2000). "In most circumstances, an inventor must expressly grant his rights in an invention to his employer if the employer is to obtain those rights." Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc., 131 S. Ct. 2188, 2195 (2011) (citing United States v. Dubilier Condenser Corp., 289 U.S. 178, 187 (1933)). The hired to invent doctrine presents an exception to this general rule, arising in circumstances "where an employee is hired to invent something or solve a particular

problem . . . ." Banks, 228 F.3d at 1359.[2]

If the scope an employee's work is narrowly directed by the employer towards the resolution of a specific problem, then the employee is obligated to assign to his employer any patents resulting from the work. Banner Metals, Inc. v. Lockwood, 178 Cal. App. 2d 643, 658 (Cal. Ct. App. 1960). On the other hand, if the scope of an employee's work is generalized within a field, a Court will not presume an employee's duty to assign his employer patents, absent a contract. Id.; 8 Chisum on Patents §22.03[2] ("The primary factor in finding an employment to invent is the specificity of the task assigned to the employee.")

In his declaration, Benton asserts that he "was not hired by Peregrine to solve particular problems or design specific technologies." (Benton Decl. ¶ 7.) Furthermore, status reports produced during Benton's term of employment at Peregrine show that he worked on a variety of products. (Doc. No. 113-6, Ex. 16.) Additionally, Benton's responsibilities extended beyond research and development, including marketing and customer support. (Id.) Benton's work at Peregrine appears to have been generalized, albeit within the field of semiconductor development. Based on the current record, Peregrine has not demonstrated a likelihood of success on the merits for its argument that Benton was bound under the hired to invent doctrine.

### III. Likelihood of Irreparable Harm

A plaintiff seeking a preliminary injunction must demonstrate that he is likely to suffer an irreparable injury in the absence of an injunction. Winter, 555 U.S. at 22. A mere possibility of irreparable harm will not suffice. Id. Peregrine argues that it faces irreparable harm because "RFMD could potentially license, assign, or offer to license or assign Peregrine's patented RF circuit technology to Peregrine's competitors." (Doc.

---

[2] California Labor Code § 2860 has been construed to be coextensive with the common law hired to invent doctrine. Gen. Elec. Co. v. Wilkins, Case No. CV F 10-0674 LJO JLT, 2012 WL 3778865, at *12-13 (E.D. Cal. Aug. 31, 2012). Therefore, the Court's order applies with equal force to Peregrine's argument regarding Benton's obligation under California Labor Code § 2860.

No. 99-1 at 26; Reedy Decl. ¶ 41.) Peregrine further asserts that any licensing or assignment by RFMD "could cause Peregrine economic harm as well as loss of goodwill." (Reedy Decl. ¶ 41; Doc. No. 126 at 7-9.)

Peregrine only asserts economic harm and loss of goodwill. Conclusory statements of economic harm and loss of goodwill are insufficient to support a finding of irreparable injury. Spiraledge, Inc. v. SeaWorld Entm't, Inc., Case No. 13CV296-WQH-BLM, 2013 WL 3467435 at *4 (S.D. Cal. July 9, 2013) ("The statements of [plaintiff's] CEO . . . are conclusory and without citation to specific evidence; accordingly, these statements are insufficient to support a finding of irreparable injury.") Accordingly, Peregrine has failed to establish that it is likely to suffer irreparable harm absent injunctive relief.

## IV. Balance of the Equities and the Public Interest

"Under Winter, a preliminary injunction movant must show, inter alia, that 'the balance of equities tips in his favor.'" Shell Offshore, Inc. v. Greenpeace, Inc., 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting Winter, 555 U.S. at 20) (distinguishing circumstances when the plaintiff must show the balance of hardships tips sharply in the plaintiff's favor). Peregrine argues that absent a preliminary injunction, it could suffer harm, but that RFMD would suffer no harm from the imposition of an injunction. (Doc. No. 99-1 at 27.) RFMD argues that a preliminary injunction would deprive it of the ability to exercise rights in patents that they have purchased. (Doc. No. 113 at 29.)

Peregrine also argues that the issuance of an injunction would protect its patent rights and thereby serve the public interest. (Doc. No. 99-1 at 27). RFMD points out that infringement is not at issue in this motion, and that a preliminary injunction concerning issues of patent ownership has no bearing on the public interest. (Doc. No. 113 at 30.) Based on the current record, Peregrine has not demonstrated that the balance of the equities tips in its favor or that an injunction would serve the public interest.

///

**Conclusion**

For the foregoing reasons, the Court denies Plaintiff's application for a preliminary injunction. Winter, 555 U.S. at 22.

**IT IS SO ORDERED**.

DATED: January 8, 2014

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT